No. 2-10-0221    Filed:  9-23-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ELIZABETH A. MACKNIN, | ) | Appeal from the Circuit Court |
| | ) | of Lake County. |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Nos. 08--D--287 |
| | ) | 09--OP--1220 |
| DAVID A. MACKNIN, | ) | |
| | ) | |
| Respondent-Appellee | ) | |
| | ) | Honorable |
| (Martin Markrack, Next Friend on Behalf of | ) | George D. Strickland, |
| I.M., Subpoena Respondent-Appellant). | ) | Judge, Presiding. |

JUSTICE BURKE delivered the opinion of the court:

This interlocutory appeal arises from the order of the circuit court of Lake County granting the motion of respondent, David A. Macknin, to disqualify attorney Stephen M. Komie from representing respondent's stepdaughter, I.M., the subpoena respondent in an order of protection case brought against respondent by petitioner, Elizabeth A. Macknin, I.M.'s natural mother. Petitioner initiated the order of protection case against respondent, her ex-husband, alleging that he had raped and sexually abused I.M. and was grooming E.M., the natural daughter from her marriage to respondent, for similar sexual abuse. After an emergency order of protection was entered with I.M. named as one of the parties, respondent issued a deposition subpoena to I.M. Martin Markrack, I.M.'s natural father, hired Komie to represent I.M. at the deposition. Respondent's motion to disqualify alleged a conflict of interest in Komie representing I.M. and that, pursuant to section 506

of the Illinois Marriage and Dissolution of Marriage Act (Dissolution of Marriage Act) (750 ILCS 5/506 (West 2008)) and article IX of the Supreme Court Rules (210 Ill. 2d R. 900 et seq.), I.M. may be represented only by independent court-appointed counsel. The trial court did not make a finding of a conflict of interest but disqualified Komie on the second ground alleged and appointed a Lake County representative for I.M. For the reasons that follow, we reverse.

FACTS

On July 29, 2009, the trial court dissolved the marriage between respondent and petitioner in In re Marriage of Macknin, No. 08--D--287. The Macknins have one biological child, E.M. Petitioner's daughter I.M. is from petitioner's previous marriage to Markrack, who filed this appeal as next friend on behalf of I.M. E.M. is now 7 years old and I.M. is 16 years old. The judgment of dissolution incorporated a joint parenting agreement previously entered into by the parties. The joint parenting agreement concerned the custody and care only of E.M. because I.M. was neither respondent's biological child nor his adopted child.

On August 12, 2009, petitioner filed a petition for an emergency order of protection (No. 09--OP--1220). The order was entered and, as amended on November 12, 2009, remains in effect. The order of protection alleges, inter alia, that respondent had raped and sexually abused I.M. and was grooming E.M. for similar sexual abuse and that such abuse occurred during the course of the marriage between petitioner and respondent.

On September 2, 2009, petitioner filed an emergency petition to terminate or suspend visitation and to modify custody in the parties' dissolution action (No. 08--D--287). Respondent did not receive notice of this filing until October 1.

On October 1, respondent filed a motion to strike the verified petition for an order of protection, and the trial court subsequently ordered petitioner to file an amended petition. In the interim, the trial court appointed Patricia Kalal on October 5, to act solely as representative for E.M. in the dissolution proceeding, pursuant to section 506(a)(3) of the Dissolution of Marriage Act (750 ILCS 5/506(a)(3) (West 2008)). Kalal was not appointed to represent I.M.

On November 1, petitioner filed an amended emergency verified petition for an order of protection, attaching an affidavit in which I.M. alleged that respondent had sexually abused her while petitioner and respondent had been married. The affidavit had been prepared by one of petitioner's lawyers, Lydia Gross Kamerlink.

On or about November 9, respondent served I.M. with a subpoena duces tecum for deposition. Shortly thereafter, on November 17, Komie filed an appearance on behalf of I.M. in the order of protection case.

On December 3, respondent filed a motion to disqualify Komie from representing I.M. The disqualification motion recounted the facts and claimed on information and belief that Komie had been hired by petitioner, either directly or indirectly, to represent I.M., thereby creating a conflict between I.M.'s interests and those of petitioner. Respondent argued that, pursuant to section 506 of the Dissolution of Marriage Act and article IX of the Supreme Court Rules (210 Ill. 2d R. 900 et seq.), any appointment of an attorney for I.M. must be made by the court because she is a minor. Although respondent did not cite which Rules of Professional Conduct apply to Komie's representation of I.M., respondent also argued that, because petitioner hired Komie to represent I.M., a conflict of interest required his disqualification pursuant to Rules 1.7 and 4.3 of the Rules of Professional Conduct (replaced by the Illinois Rules of Professional Conduct of 2010, Official Reports Advance Sheet No.

14 (July 15, 2009), Rs. 1.7, 4.3, eff. January 1, 2010). Respondent was concerned that petitioner would prejudice respondent and E.M. by controlling I.M.'s participation in the case.

On January 25, 2010, petitioner filed a response to the motion to disqualify, denying that Komie should be disqualified.

On February 8, 2010, I.M. filed a motion to strike and dismiss respondent's arguments or, in the alternative, for entry of a judgment on the pleadings pursuant to section 2--615 of the Code of Civil Procedure (Code) (735 ILCS 5/2--615 (West 2008)), and presented the following arguments: (1) the motion to disqualify failed to allege any facts demonstrating a conflict pursuant to the Rules of Professional Conduct; (2) any citizen, no matter how old, is entitled to obtain a lawyer for any court proceeding; (3) as a victim of a crime, I.M. enjoys the benefits of the Illinois Crime Victims Bill of Rights guaranteed by the Illinois Constitution (Ill. Const. 1970, art. I, §8.1); (4) respondent lacked standing to complain of any potential conflict between I.M. and her choice of counsel; and (5) she was not a party to the litigation, but a witness, and historically courts did not appoint counsel for witnesses. This motion did not reference Markrack.

Respondent replied to the motion to strike or dismiss, arguing that it was improper to attack or respond to a disqualification motion with a motion to strike brought under section 2--615 and that the motion to disqualify was not a "pleading."

At the hearing to disqualify on February 18, 2010, respondent reiterated his allegation that petitioner had hired Komie. Komie denied the allegation and stated, after being directly questioned by the trial court, that Markrack signed the contract with Komie for his representation of I.M. in connection with the subpoena for deposition. The trial court asked Komie if Markrack was paying

his fee or if anyone else was paying it, and Komie replied that it was his understanding that Markrack was paying it.

Later in the proceedings, the following questioning took place:

"THE COURT: So far Mr. Komie, and I asked him the question, and he is going to be held to it, and I will give you a chance to supplement your answer. So far Mr. Komie, you indicated he [Markrack] just walked into your office and you are unaware of any referral.

Given what Mrs. Gertler [respondent's counsel] said, do you have anything else to say about any contacts with this family or relationships that I should know about?

MR. KOMIE: I have no relationship with Mr. Chez [petitioner's father].

THE COURT: How about [petitioner]?

MR. KOMIE: I have met [petitioner].

THE COURT: Prior to Mr. [Markrack] coming in to see you?

MR. KOMIE: I have met her on one occasion prior to that.

THE COURT: Describe the nature of that.

MR. KOMIE: It was a social conversation.

THE COURT: Did she discuss any legal matters with you?

MR. KOMIE: Not on that occasion.

THE COURT: Subsequent to that occasion, but prior to Mr. [Markrack] coming in to see you, did she?

MR. KOMIE: There was a second meeting where she did talk about some things.

THE COURT: All right. Without going into the specific--so you had a meeting with her regarding legal issues prior to Mr. Markrak [sic] coming in to see you?

MR. KOMIE: Yes, correct.

THE COURT: Are you asserting that those are covered by attorney-client privilege, the statements that she made?

MR. KOMIE: Now, based on what I have learned from the ARDC's view of the rules that were just published in January, any time a potential client talks to you, everything they say is now covered by privilege. That's a new item which if you look at the commentary to the new rule, anyone that talks to you about anything that touches on a legal matter, it is now under privilege.

THE COURT: How much time passed between your meeting with [petitioner] and your meeting with [Markrack]?

MR. KOMIE: Months."

The trial court rejected the argument that I.M.'s rights were somehow defined by the Illinois Rights of Crime Victims and Witnesses Act (725 ILCS 120/1 et seq. (West 2008)), as there was no indictment or criminal prosecution, the child was not named as a victim, and this was not a criminal proceeding. The court noted that it placed little weight on Rule 1.7 of the Rules of Professional Conduct, the conflict of interest general rule, even though it was "concerned first being told that the father of the child came in about representation" and, upon more pointed questioning, "finding out that [petitioner] prior to that had [come] in and apparently had conversations regarding representation with Mr. Komie." Despite finding that this raised a legitimate concern, the court stated that it did not base its ruling on the apparent conversation between petitioner and Komie.

The court noted that section 506 of the Dissolution of Marriage Act concerns proceedings involving the support, custody, visitation, education, parentage, property interest, or general welfare

of a minor child and that a court may appoint a representative for a minor on its own motion. The court stated that it understood that I.M. was not the subject of a child custody case, but the proceedings involved a minor who needed protection. The court found a nexus between section 506 of the Dissolution of Marriage Act, regarding the general welfare of a minor, and Supreme Court Rule 900(b)(2) (210 Ill. 2d R. 900(b)(2)), which indicates that article IX applies to those actions that fall under the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 et seq. (West 2008)), the act under which the order of protection is governed. Reading the "900 Series together with [section] 506," the court held that section 506 had been violated because, pursuant to Supreme Court Rule 907 (210 Ill. 2d R. 907), a child representative must be appointed by the court, and the attorney for the minor must adhere to all ethical rules. The court concluded:

> "So for those reasons, and somewhat of a concern *** towards the appearance of a potential conflict of interest regarding [Rule] 1.7, but mainly because *** Mr. Komie was not appointed by this Court, the motion to disqualify Mr. Komie is granted."

The court then appointed Thomas Gurewitz as child representative for I.M., finding that, although Komie "does in fact have the necessary training and experience to act as a child representative, *** he is not recognized as such in Lake County."

On March 3, 2010, Komie filed an interlocutory appeal on behalf of Markrack, as next friend of I.M., "Subpoena Respondent," from the February 18, 2010, order disqualifying Komie. On March 4, 2010, Komie filed, on behalf of Markrack, a "Subpoena-Respondent's" petition for leave to appeal, pursuant to Supreme Court Rules 306(a)(5) and (a)(7) (Official Reports Advance Sheet No. 6 (March 24, 2010, Rs. 306(a)(5), (a)(7), eff. February 26, 2010).

On March 26, respondent filed a motion to dismiss the appeal for want of appellate jurisdiction. We denied respondent's motion and granted the leave to appeal.

ANALYSIS

Jurisdiction

Before addressing the merits of the appeal, we need to deal with several preliminary issues. First, in his appellate brief, respondent renews the motion to dismiss the appeal for lack of jurisdiction, which we previously denied. Respondent submits that, even if we continue to adhere to our decision, "a decision will serve to clarify what exactly is the jurisdictional grounds for this appeal."

I.M.'s statement of jurisdiction states that this court's jurisdiction is pursuant to either Supreme Court Rule 306(a)(5) or 306(a)(7) (Official Reports Advance Sheet No. 6 (March 24, 2010), Rs. 306(a)(5), (a)(7), eff. February 26, 2010). Rule 306(a)(7) provides that a "party" may petition for leave to appeal to the appellate court "from an order of the circuit court granting a motion to disqualify the attorney for any party." Official Reports Advance Sheet No. 6 (March 24, 2010), R. 306(a)(7), eff. February 26, 2010.

Respondent contends, as he did in the motion to dismiss the appeal, that I.M. is not a "party" within the meaning of the rule and therefore we do not have jurisdiction. We cannot read the rule so restrictively. The rule does not designate that a "party" must be a plaintiff, defendant, or third party to the action in order to petition for leave to appeal. Rather, the rule simply provides that a "party" may petition for leave to appeal from an order granting a motion to disqualify "the attorney for any party." Official Reports Advance Sheet No. 6 (March 24, 2010), R. 306(a)(7), eff. February 26, 2010. I.M., as a protected person under an order of protection, is a "party" to that proceeding. I.M.

is also a party to the motion to disqualify her attorney. Accordingly, we find that we have jurisdiction under Rule 306(a)(7).

## Mootness

Next, respondent contends that the appeal should be dismissed on grounds of mootness. On June 10, 2010, I.M. filed an appellant's brief. On June 21, 2010, respondent filed a combined motion that included, inter alia, a motion to dismiss the appeal as moot. On June 25, 2010, I.M. filed an answer and objections to the combined motion. On July 13, we entered an order denying the relief requested. However, respondent had filed his appellate brief before we entered the order denying the relief requested. Respondent's contention of mootness was based on the then-pending combined motion, which has since been denied. Thus, we need not address this issue.

We observe that respondent references the combined motion in his appellate argument and attaches the motion to the appendix of his appellate brief. I.M. filed a motion, which we have taken with the case, to strike those portions of respondent's appendix that have never been filed in the trial court and are not part of the record on appeal. The attached exhibits are dehors the record and respondent has not been granted leave to supplement the record pursuant to Supreme Court Rule 342(a)(3) (210 Ill. 2d R. 342(a)(3)). Accordingly, the motion to strike is granted.

## Respondent's Standing

We next address I.M.'s contention that respondent lacks standing to complain of her choice of counsel. I.M. asserts that respondent is neither her father nor her blood relative and that, because he is a "legal stranger" to her, he has no legal say in any choices she might make. I.M. relies on In re Marriage of Nienhouse, 355 Ill. App. 3d 146 (2004), to support her argument.

In <u>Nienhouse</u>, during the pendency of the divorce proceeding, the petitioner gave birth to a child. The respondent filed a petition for establishment of nonpaternity, after which an order of nonpaternity was entered. Nearly four years after entry of the nonpaternity order, the respondent filed a motion to vacate the order of nonpaternity. The respondent also filed a motion for sibling visitation between the parties' child and the petitioner's child. The trial court denied both of the respondent's motions and, subsequently, entered the judgment of dissolution, which incorporated the prior order reflecting the parties' agreement to sibling visitation between the parties' child and the petitioner's child. On appeal, the respondent raised the argument that the trial court's failure to appoint a guardian <u>ad litem</u> (GAL) for the petitioner's child and make a best interest determination with respect to the respondent's petition to establish nonpaternity deprived the child of her due process rights. The appellate court found that the respondent lacked standing to raise the issue. <u>Nienhouse</u>, 355 Ill. App. 3d at 153.

The court initially commented that the respondent failed to explain why he had standing to assert the minor's rights where he was not her father or legal guardian. <u>Nienhouse</u>, 355 Ill. App. 3d at 152. Noting the law that a party has standing to bring a constitutional challenge only if the party is able to show himself to be within the class aggrieved by the alleged unconstitutionality, the court explained that the respondent's right to due process was not at issue; rather, he attempted to argue on behalf of the child's best interest. The court concluded that the respondent could not act in such a capacity, because he was neither her father nor her legal guardian and thus had no standing to raise a constitutional issue on appeal. <u>Nienhouse</u>, 355 Ill. App. 3d at 153-54.

"The doctrine of standing is designed to preclude persons who have no interest in a controversy from bringing [a law]suit." <u>Glisson v. City of Marion</u>, 188 Ill. 2d 211, 221 (1999). "The

doctrine ensures that issues are only raised by those with a real interest in the outcome of the controversy." Glisson, 188 Ill. 2d at 221. Standing requires some injury in fact to a legally cognizable interest. Glisson, 188 Ill. 2d at 221. "The claimed injury may be actual or threatened, and it must be[:] (1) distinct and palpable; (2) fairly traceable to the defendant's actions; and (3) substantially likely to be prevented or redressed by the grant of the requested relief." Glisson, 188 Ill. 2d at 221.

Respondent does not address the validity of his standing to bring the motion to disqualify I.M.'s counsel. An appellee's failure to respond to an argument raised in the appellant's brief may constitute a concession. See Vukusich v. Comprehensive Accounting Corp., 150 Ill. App. 3d 634, 644 (1986). Respondent's failure to respond notwithstanding, we believe he does have standing to bring a motion to disqualify counsel, unlike the respondent in Nienhouse.

In Nienhouse, the respondent attempted to assert a legal right or claim on behalf of the minor's best interest, but he was unrelated to her and therefore was not able to show that he was within the class aggrieved by the alleged unconstitutionality. Nienhouse, 355 Ill. App. 3d at 153-54. Here, however, respondent does not seek a legal right or claim on behalf of I.M.'s best interest. Rather, respondent seeks to disqualify Komie for an alleged harm to himself. I.M., not respondent, is the party who is asserting that she has the right to counsel of her choice. Because respondent alleged a conflict of interest that could prejudice him by allowing petitioner to control I.M.'s participation in the case through Komie's representation of I.M., he would receive the benefits if his action were successful. Accordingly, we find that respondent has standing.

Markrack's Standing

Next, respondent claims that Markrack does not have legal standing to sue, because Markrack never filed an appearance before the trial court. We find that respondent has forfeited this argument on appeal. "Lack of standing is an affirmative defense and is [forfeited] if not raised at the trial court level." In re Guardianship of Mabry, 281 Ill. App. 3d 76, 82 (1996). Respondent knew at the hearing on the motion to disqualify that Markrack had hired Komie on behalf of I.M., and respondent did not object to Markrack's lack of standing then.

Regardless of respondent's failure to object, "[t]he essence of the inquiry regarding standing is whether the litigant, either in an individual or representative capacity, is entitled to have the court decide the merits of a dispute or a particular issue." In re Estate of Wellman, 174 Ill. 2d 335, 345 (1996). Respondent cannot maintain that I.M.'s father, as next friend, is not entitled to have the court decide the merits of the dispute on behalf of his daughter, and it would serve no purpose to remand for Markrack to refile an appearance to add his name to the caption.

Disqualification

Having determined that respondent has standing, we now turn to the merits of the appeal. I.M. contends that the trial court erred by granting respondent's motion to remove Komie from representing her during the order of protection proceedings. As stated, while the trial court mentioned that it was concerned with a possible conflict of interest, it did not rule on that issue. Rather, in granting the motion to disqualify, the trial court relied solely on article IX of the Supreme Court Rules and section 506 of the Dissolution of Marriage Act in concluding that an attorney for a child must be appointed by the court. I.M. asserts that this is an issue of first impression and that the trial court had no basis to disqualify Komie pursuant to article IX or section 506. We agree.

As to the appropriate standard of review, "a motion to disqualify is addressed to the sound discretion of the trial court, and its determination will not be disturbed absent a showing of abuse of that discretion." Skokie Gold Standard Liquors, Inc. v. Joseph E. Seagram & Sons, Inc., 116 Ill. App. 3d 1043, 1053 (1983). I.M. maintains that, because the trial court based its decision solely on a misapplication of law rather than any particular factual findings, our review is de novo.

"Little turns, however, on whether we label review of this particular question abuse of discretion or de novo, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction. [Citation.] A district court by definition abuses its discretion when it makes an error of law. [Citation.] That a departure decision, in an occasional case, may call for a legal determination does not mean, as a consequence, that parts of the review must be labeled de novo while other parts are labeled an abuse of discretion. [Citation.] The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Koon v. United States, 518 U.S. 81, 100, 135 L. Ed. 2d 392, 414, 116 S. Ct. 2035, 2047-48 (1996).

See also Cable America, Inc. v. Pace Electronics, Inc., 396 Ill. App. 3d 15, 24 (2009) (holding that a trial court can abuse its discretion where its ruling rests on an error of law).

"Attorney disqualification is a drastic measure because it destroys the attorney-client relationship by prohibiting a party from representation by counsel of his or her choosing." Schwartz v. Cortelloni, 177 Ill. 2d 166, 178 (1997), citing SK Handtool Corp. v. Dresser Industries, Inc., 246 Ill. App. 3d 979, 989 (1993). Courts place the heavy burden on the movant to prove the grounds for the disqualification in order to ensure that the motion is not being brought as a tactical weapon to gain undue advantage in the litigation. SK Handtool, 246 Ill. App. 3d at 989.

Because the trial court relied on section 506 of the Dissolution of Marriage Act and article IX of the Supreme Court Rules to remove Komie as I.M.'s counsel, their scope and application are at issue. "We interpret supreme court rules in the same manner as statutes, applying the cardinal rule of construction in which we ascertain and give effect to the intent of the drafter, using the plain and ordinary language of the rule." People v. Calabrese, 398 Ill. App. 3d 98, 120 (2010). When the statute's language is clear, it must be applied as written without resort to aids or tools of interpretation. Skarin Custom Homes, Inc. v. Ross, 388 Ill. App. 3d 739, 743 (2009). The construction of a statute is a question of law, to which we apply de novo review. Skarin Custom Homes, 388 Ill. App. 3d at 743.

Section 506 of the Dissolution of Marriage Act provides, in relevant part:

"(a) Duties. In any proceedings involving the support, custody, visitation, education, parentage, property interest, or general welfare of a minor or dependent child, the court may on its own motion or that of any party, appoint an attorney to serve in one of the following capacities to address the issues the court delineates:

(1) Attorney. The attorney shall provide independent legal counsel for the child and shall owe the same duties of undivided loyalty, confidentiality, and competent representation as are due an adult client.

* * *

(a--3) Additional appointments. During the proceedings the court may appoint an additional attorney to serve in the capacity described in subdivision (a)(1) or an additional attorney to serve in another of the capacities described *** on the court's own motion or that

of a party only for good cause shown and when the reasons for the additional appointment are set forth in specific findings." 750 ILCS 5/506 (West 2008).

Section 506 of the Dissolution of Marriage Act involves proceedings concerning the support, custody, visitation, education, parentage, property interest, or general welfare of a minor or dependent child. Generally, in those cases involving contested disputes, where there is an indication of a potential conflict between the child's interests and a parent's interests, a court has an obligation to appoint a GAL or child representative. See, e.g., Nienhouse, 355 Ill. App. 3d at 152. Here, however, there is no dispute involving I.M.'s custody, visitation, education, parentage, property interest, or general welfare under the Dissolution of Marriage Act. Further, there is no real conflict between I.M. and a parent in the proceeding, as I.M. and her mother share the goal of restricting contact between I.M. and respondent, who is not I.M.'s parent. Beyond that, there is no express statutory requirement that a trial court appoint a GAL or child representative in every domestic violence proceeding. See 750 ILCS 5/506(a) (West 2008) ("the court may *** appoint an attorney").

Supreme Court Rule 900 provides, in relevant part:

"(a) Purpose. Trial courts have a special responsibility in cases involving the care and custody of children. When a child is a ward of the court, the physical and emotional well-being of the child is literally the business of the court. The purpose of this article (Rules 900 et seq.) is to expedite cases affecting the custody of a child, to ensure the coordination of custody matters filed under different statutory Acts, and to focus child custody proceedings on the best interests of the child, while protecting the rights of other parties to the proceedings.

(b)(1) Definitions. For the purposes of this article 'child custody proceeding' means an action affecting child custody or visitation. ***

(b)(2) Part A. <u>Scope</u>. Rules 900 through 920, except as stated therein, apply to all child custody proceedings initiated under article II, III, or IV of the Juvenile Court Act of 1987, the Illinois Marriage and Dissolution of Marriage Act, the Uniform Child Custody Jurisdiction and Enforcement Act, the Illinois Parentage Act of 1984, and the Illinois Domestic Violence Act of 1986 and article 112A of the Code of Criminal Procedure of 1963, and guardianship matters involving a minor under article XI of the Probate Act of 1975." (Emphasis added.) 210 Ill. 2d Rs. 900(a), (b)(1), (b)(2).

The committee comments to the rule state:

"Rule 900 emphasizes the importance of child custody proceedings and highlights the purpose of the rules that follow, which is to ensure that child custody proceedings are expeditious, child-focused and fair to all parties.

* * *

Paragraph (b)(1) defines 'Child custody proceeding' broadly for the purposes of the rules. The broad definition is important, because the need to expedite custody decisions applies to all types of custody cases and coordination of custody cases is essential." 210 Ill. 2d R. 900, Committee Comments, at 359.

As stated, the order of protection action is governed by the Illinois Domestic Violence Act of 1986 (750 ILCS 60/101 <u>et seq.</u> (West 2008)). While Rule 900(b)(2), in conjunction with Supreme Court Rule 906 (210 Ill. 2d R. 906 (rule promulgated to ensure that counsel who are appointed by the court to participate in child custody and visitation matters, as delineated in Rule 900(b)(2),

possess certain professional attributes)), applies to attorney appointments made pursuant to an action under the Domestic Violence Act, it is implemented only when a minor is in an action affecting his or her custody or visitation. The Domestic Violence Act, upon which the trial court found a nexus, contains no requirement to appoint a GAL or representative for a minor in an order of protection case.

Thus, because respondent does not have custody of I.M. and she is not involved in any custody or visitation matter, article IX is inapplicable to I.M. Article IX is not a vehicle to appoint counsel. Rather, it represents a minimum standard or guideline when the trial court does appoint counsel for a minor who is involved in a custody dispute, so that the custody matter is expedited. Accordingly, we find that the trial court abused its discretion by exceeding its authority and disqualifying Komie pursuant to section 506 of the Dissolution of Marriage Act and article IX of the Supreme Court Rules, and we reverse the order of the trial court.

Right to Counsel

In light of our decision, we need not reach I.M.'s contention that she is entitled to counsel of her choice based on the crime victims amendment set forth in article I, section 8.1, of the Illinois Constitution (Ill. Const. 1970, art. I, §8.1(a)(4)) and the Rights of Crime Victims and Witnesses Act (725 ILCS 120/4(a)(9) (West 2008)), or the argument that the trial court's order impermissibly interfered with both her and her father's constitutional right to choose counsel. See Lyon v. Department of Children & Family Services, 209 Ill. 2d 264, 271 (2004) (we will not reach constitutional issues presented in a case if matter can be resolved on other grounds).

Conflict of Interest

Although respondent alleged that a conflict existed because petitioner paid for Komie to represent I.M., the trial court never ruled on the issue and respondent never submitted any evidence of payment in the trial court. Even so, we note the comment to the Illinois Rules of Professional Conduct of 2010, which states that "[a] lawyer may be paid from a source other than the client, including a co-client, if the client is informed of that fact and consents and the arrangement does not compromise the lawyer's duty of loyalty or independent judgment to the client." Official Reports Advance Sheet No. 14 (July 15, 2009), R. 1.7, eff. January 1, 2010, Comment, at 43.

## CONCLUSION

For the preceding reasons, we reverse the judgment of the circuit court of Lake County.

Reversed.

O'MALLEY and SCHOSTOK, JJ., concur.